IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FELTON PETROLEUM, INC., <br><br> Plaintiff, <br><br> v. <br><br> GPM INVESTMENTS, LLC, <br><br> Defendant. | C.A. No. 07-760-JJF <br><br> **REDACTED VERSION** |

**FELTON PETROLEUM'S REPLY BRIEF IN SUPPORT OF
ITS MOTION FOR A PRELIMINARY INJUNCTION**

 

**PRICKETT, JONES & ELLIOTT, P.A.**

John W. Paradee (# 2767)
D. Benjamin Snyder (# 4038)
Kevin M. Baird (# 4219)
11 North State Street
Dover, Delaware 19901
(302) 674-3841
*Attorneys for the Plaintiff*

Date: January 21, 2008

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION ................................................................................................................1

STATEMENT OF FACTS ...................................................................................................2

    The Carve-Out Value of the Felton BP Station ...............................................................2

    Even Under the Status Quo, the Felton BP Station Is Profitable to
    GPM ....................................................................................................................................5

    ███████████████████████████████ ......................................................6

ARGUMENT: ......................................................................................................................7

    1.    The Undisputed Facts, Including GPM's Own
         Documents, Demonstrate Serious Questions Going to the
         Merits of the Case ....................................................................................................8

         A.  GPM's proposed rent increase was not made in good
         faith or in the ordinary course of business ..........................................................9

         B.  GPM's scheme to convert the Felton BP station into
         a company operated station is explicitly prohibited by the
         PMPA ..................................................................................................................11

         C.  The balance of hardships weighs strongly in favor of
         Felton Petroleum ................................................................................................12

    2.    No Bond is Required or Warranted in this Case ................................................13

CONCLUSION ..................................................................................................................14

# TABLE OF AUTHORITIES

**CASES:** **PAGE:**

*Ackley v. Gulf Oil Corp.*, 726 F. Supp. 353 (D. Conn. 1989) .................................................. 10

*Baldauf v. Amoco Oil. Co.*, 553 F. Supp. 408 (D. Mich. 1981) ............................................... 10

*Bellmore v. Mobil Oil Corp.*, 524 F. Supp. 850, 853 (D. Conn. 1981) ................................ 9, 10

*Chestnut Hill Gulf, Inc. v. Cumberland Farms, Inc.*, 788 F. Supp. 616, 619
(D. Mass. 1992) ......................................................................................................................... 14

*Daniels v. Dilmar Oil Co.*, 502 F. Supp. 178 (D. Mich. 1980) ................................................ 14

*Davy v. Murphy Oil Corp.*, 488 F. Supp. 1013 (D.S.C. 1980) ................................................. 14

*Ferriola v. Gulf Oil Corp.*, 496 F. Supp. 158 (E.D. Pa. 1980) ................................................. 10

*Greco v. Mobile Oil Corp.*, 597 F. Supp. 468, 471 (N.D. Ill. 1984) ......................................... 13

*Lippo v. Mobil Oil Corp.*, 802 F.2d 975, 977-78 (7th Cir. 1986) ............................................... 9

*Meyer v. Amerada Hess Corp.*, 541 F. Supp. 321 (D.N.J. 1982) .......................................... 9, 10

*Mobil Oil. Corp. v. Vachon*, 580 F. Supp. 153, 159 (D. Mass 1983) .................................. 13, 14

*Munno v. Amoco Oil Co.*, 488 F. Supp. 1114 (D. Conn. 1980) ............................................. 9, 10

*Plamieri v. Mobil Oil Corp.*, 529 F. Supp. 506, 511 (D. Conn. 1982) ..................................... 10

**STATUTES:**

15 U.S.C. §2805(b)(3) (1994) ................................................................................................... 13

Fed. R. Civ. P. 65(c) ..................................................................................................................... 1

Section 2802(b)(3)(A) .................................................................................................................. 8

Section 2802(b)(3)(A)(ii) ............................................................................................................. 9

Section 2805(b)(3) .................................................................................................................. 1, 13

## INTRODUCTION

GPM Investments, LLC admits three critical facts in its answering brief:

1. GPM terminated Felton Petroleum's franchise agreement;

2. The Felton site was "modeled"—or targeted—to be converted to a company-operated store; and

3. GPM has not applied its rent increase formula uniformly to all of its franchisees.

The admission of these key facts alone creates a sufficiently serious question going to the merits to make this case a fair ground for litigation. Although GPM attempts to explain away these facts, many serious questions remain for a jury to decide. These admissions, in connection with the relaxed injunction standards of the PMPA, and a balancing of the hardships, demonstrate that a preliminary injunction is appropriate in this case.

Recognizing the propriety of a preliminary injunction, GPM now asks the Court to require an unreasonable bond. What GPM essentially wants is for Felton Petroleum to "prepay" the rent increase it already cannot afford. Felton Petroleum filed this lawsuit because it would go out of business under the burden of GPM's nearly 100% rent increase and GPM's actions violate the PMPA. Contrary to GPM's assertion, the standard for a bond in PMPA cases is *not* the same as Federal Rule 65(c) and a bond is not "required." Section 2805(b)(3) of the PMPA is clear that nothing "prevents any court from requiring [a bond]." A bond is certainly not mandatory—as GPM states—nor is it warranted in this case.

The facts at this stage of the case demonstrate that GPM's rent increase was not arrived at in good faith or in the normal course of business, but rather, is simply a pretext to convert Felton Petroleum's station into a GPM-run station. Such action is explicitly prohibited by the PMPA and exactly the type of situation the PMPA was intended to prevent.

1

## STATEMENT OF FACTS

### The Carve-Out Value of the Felton BP Station

GPM states that it set its $200,000 annual rent for the Felton Petroleum station based on ███████████████████████████████████████████ ███████████████████████████████████████ ██████████—it is not based on any actual appraisal or past performance of the station.[1] Rather, it was "based for the most part on a station's potential cash flow."[2]

███████████████████████████████████████
███████████████████████████████████████
████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████ After Felton Petroleum filed its opening brief and deposed GPM's officers, GPM produced additional documents including this financial model. ███████████████████████████████████████
████████████████████████████████

The financial model for the Felton station (below) shows GPM's projections from 2007–2011, presumably in thousands of dollars.

[chart redacted]

---

[1] Loper depo. at 46-47; McComas depo. at 31.
[2] GPM's Answering Br. at 8; Bassell Depo. at 14-17.
[3] GPM's Answering Br. at 8-9; McComas Depo. at 32-35.
[4] GPM's Answering Br. at 9; Bassell Depo. at 10-14; 16-18.
[5] GPM1203. ████████████████████████████████████ GPM1170-1171; GPM1186-1187.

The model shows that, in 2007, the Felton station was operated by Felton Petroleum. ███████

The model for 2008, however, was based on an entirely different set of assumptions. ███████ The only way GPM would realize these profits was if the Felton station became a company-operated station in 2008. ███████ GPM would now get all of those profits as the station's owner/operator. ███████

---

[6] Loper depo. at 28-29.

 Seeing these numbers, it is no wonder why the Felton station was targeted for conversion to a company-operated station. Indeed, the Felton station was targeted before GPM ever bought the station or heard of Mr. Patel.[7]

With the goal of converting the Felton station into a company-owned station, GPM put its rent increase in place shortly after acquiring the asset from GLeS. Knowing that Mr. Patel could not afford a $200,000 annual rent based upon his own profits,[8] GPM's rent increase was take-it-or-leave-it, with no room for negotiation. In response to Mr. Patel's insistence that no franchisee could operate the Felton BP station at that rent, GPM's CEO responded that GPM could double the sales at the store if GPM took it over and operated the store itself—which was the plan all along.[9]

### Even Under the Status Quo, the Felton BP Station Is Profitable to GPM

GPM's own model belies the assertion that it would lose money if the Felton station remained run by Mr. Patel—even at the 2007 terms. GPM's rent to GLeS for the Felton station ▌ In looking at actual numbers, rather than projections, as of October 31,

---

[7] GPM's Answering Br. at 9; McComas Depo. at 39-40; Bassell Depo. at 8-9; 145-49.
[8] McComas depo. at 39-40.
[9] Complaint at ¶34; Loper depo. at 89; McComas depo. at 65, 68.

2007, the Felton station sold 683,000 gallons of gas.[10] Projected through 2007, that is 819,600 gallons. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Thus, even with no rent increase, change in terms, or improvements, GPM would not lose a cent on the Felton station. With a reasonable rent increase, and improved sales—as GPM claims it could help with—the Felton station would be profitable to GPM even as a dealer-owned station. But that is apparently not enough for GPM.

### GPM's Actual Application ▇▇▇▇▇▇

To date, GPM has had four previously-owned GLeS franchisee leases come up for renewal. Only two stations—Felton and Berlin—▇▇▇▇▇▇▇▇▇ and both refused because they could not survive under it. Not a single GPM station, therefore ▇▇▇▇▇▇▇▇▇ The two other stations that were up for renewal—Boulevard and Christiana—both got renewal leases on much different terms.

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ GPM downplays this in a footnote in its brief alleging that there was some miscommunication between GPM employees when the rates for these stores were set.[14] ▇▇▇▇▇▇▇▇

---

[10] Complaint at ¶9.
[11] Bassell depo. at 30-33; GPM0176.
[12] Bassell depo. at 30-33; GPM1541-1542.
[13] GPM0176; GPM1541-1542.
[14] GPM's Answering Br. at 10, fn.48.

5

██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████ Ultimately, the undisputed fact remains that among the only four stores to come up for lease renewal, three different formulas were applied and not a single GPM store has a lease ████████
██

████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████ ████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████

---

[15] GPM1541-1543.
[16] Op. Br. at 12; Loper depo. at 90-93; FEL0380; GPM0176-177.
[17] GPM0176. ████████████████
████████████████████████████████
[18] FEL0380.
[19] GPM0176.
[20] Loper depo. at 16, 90-93.

6

## **Argument**

The parties agree that, under the PMPA, a preliminary injunction must be entered if Felton Petroleum can show three things:

1. The franchise was terminated;

2. There exist sufficiently serious questions going to the merits to make such questions fair ground for litigation; and

3. The balance of hardships tips in favor of Felton Petroleum.

Felton Petroleum has met these requirements.

1. **The Undisputed Facts, Including GPM's Own Documents, Demonstrate Serious Questions Going to the Merits of the Case**

The fact that Felton Petroleum's franchise was terminated is not disputed—thus, the first requirement is met. As to the second, the parties also agree that § 2802(b)(3)(A) of the PMPA sets out the standard to determine if a sufficiently serious question exists. As to this requirement, however, GPM engages in some legal misdirection.

Under § 2802(b)(3)(A), a franchisor may terminate a franchise only if the following conditions are met:

> The failure of the franchisor and the franchisee to agree to changes or additions to the provisions of the franchise, if –
>
> (i) such changes or additions are the result of determinations made by the franchisor in good faith and in the normal course of business; **and**
>
> (ii) such failure is not the result of the franchisor's insistence upon such changes or additions **for the purpose of converting the leased marketing premises to operation by employees or agents of the franchisor for the benefit of the franchisor** or otherwise preventing the renewal of the franchise relationship.

GPM acknowledges the first element (i), but its brief is entirely silent—and does not even cite—the second element (ii).[21] Instead, it instructs the Court that "[i]n order to determine this, the court must perform a two-prong analysis: (i) determine whether GPM's actions were taken in good faith, and (ii) made in the normal course of business."[22] Rather than citing the text of the statue—which was substantially amended in 1994—GPM cites a 1986 case applying the old standard.[23] GPM fails to instruct the Court that in 1994, an entirely new § 2802(b)(3)(A)(ii) was added to:

> make explicit that upon renewal a franchisor may not insist on changes to a franchise agreement where the purpose of such changes is to prevent renewal in order to convert a franchisee-operated service station into a company-operated service station.[24]

GPM's termination of Felton Petroleum's franchise does not meet either of these two actual requirements—and GPM does not even dispute the second.

The facts at this stage demonstrate that there exist sufficiently serious questions going to the merits of each of these requirements to make such questions a fair ground for litigation. Felton Petroleum's motion, therefore, must be granted.

### A.    GPM's proposed rent increase was not made in good faith or in the ordinary course of business.

GPM first tries to characterize Felton's argument on this requirement as asking this Court to determine the reasonableness of the 97% rent increase—this is a red herring. Felton did not, and does not, ask this Court for an opinion whatsoever on the reasonableness of GPM's increase. Rather, it simply asks the Court to use the rent increase as one factor in its determination of

---

[21] GPM's Answering Br. at 17.
[22] GPM's Answering Br. at 17.
[23] GPM's Answering Br. at 17 (citing *Lippo v. Mobil Oil Corp.*, 802 F.2d 975, 977-78 (7th Cir. 1986).
[24] H.Rep No. 103-737, 103d Cong., 1st Sess. ("House Report") 2. Attached as Ex. "A".

GPM's good-faith in setting the increase.[25] GPM spends two pages and cites a multitude of cases that the reasonableness of a rent increase is not an issue—Felton agrees.

The amount of the rent increase, when combined with GPM's selective application of its multiple rent increase formulas and stated plans to convert the Felton station to company operation, *is* however, relevant and instructive as to GPM's bad faith.[26] GPM's brief states that "courts have upheld franchisor demands for rent increases ranging from 100% to 300% when those demands were made in accord with established rental calculations applied to all franchisees and not for the purpose of selectively terminating a particular franchise."[27] GPM again cites a multitude of cases for this proposition,[28] and again—Felton agrees.

The *undisputed* facts in this case, however, show that GPM did not apply an established formula uniformly to all stations and it most certainly targeted specific stations—including Felton—for termination and conversion to company-owned sites. GPM's steadfast refusal to

---

[25] *See e.g., Munno v. Amoco Oil Co.*, 488 F. Supp. 1114 (D. Conn. 1980) (stating that "in cases where rent is not set pursuant to a cost analysis formula applied uniformly to all dealers, grossly unreasonable effects might be some circumstantial evidence of bad faith"); *Bellmore v. Mobil Oil Corp.*, 524 F. Supp. 850, 853 (D. Conn. 1981) (stating that "[o]f course, subjective intent is most commonly determined from circumstantial objective evidence, and, therefore, predictable effects of certain conduct may shed light on the actor's intent"); *Meyer v. Amerada Hess Corp.*, 541 F. Supp. 321 (D.N.J. 1982) (noting that "totally irrational provisions might bear upon a franchisor's good faith").

[26] *See e.g., Baldauf v. Amoco Oil Co.*, 553 F. Supp. 408 (D. Mich. 1981) (noting that the lack of "[s]ubjective good faith can be shown from objective evidence such as interoffice memos tending to constitute a demonstration of bad faith").

[27] GPM's Answering Br. at 20.

[28] In fact, every case cited by GPM is distinguishable from the case at hand because in those cases the franchisor was applying an established rent increase formula in a uniform manner. *See e.g., Plamieri v. Mobil Oil Corp.*, 529 F. Supp. 506, 511 (D. Conn. 1982) (noting that "plaintiffs have offered no convincing evidence to prove that such selective discrimination occurred here"); *Munno*, 488 F. Supp. at 1116 (stating that "[t]here was no question that [the rent increase formula] was being applied uniformly"); *Meyer*, 541 F. Supp. at 330 (stating "[t]here is no showing whatsoever that plaintiff was treated differently from other dealers"); *Bellmore*, 524 F. Supp. at 853 (stating that "[the franchisee's] new contract rent was determined by use of a formula which is applied to franchisees throughout the country"); *Ferriola v. Gulf Oil Corp.*, 496 F.Supp. 158 (E.D. Pa. 1980) (stating that franchisor "did not treat franchisee differently than it did other dealers"); *Ackley v. Gulf Oil Corp.*, 726 F. Supp. 353 (D. Conn. 1989) (stating that "[s]ignificantly, all rents, including those decreased as well as those increased, were calculated by [the franchisor] pursuant to the same, uniform mathematical formula").

9

compromise—or even negotiate—combined with a proposed rent increase that it felt only a GPM-run station could meet, demonstrates that the proposed rent increase was not in good faith. In fact, it shows that the increase was nothing more than a pretext for GPM to take over the station for itself—precisely what the PMPA prohibits.

GPM's proposed rent increase was also not done in the normal course of business. GPM has used other formulas in calculating rent for other outlets, all of which involved rent increases ███████████████████████████████████████████████ None of these formulas were applied or offered to the Felton BP station. GPM's argument that its formula with regard to rent was "to cover its costs plus realize a modest rate of return" simply does not hold true.[29] ███████████████████████████████

███████████████████  ███████████████████

████████████████████████████████████████████████

████████

The facts, even at this early stage, all point to the conclusion that GPM's rent increase was not the product of a good faith determination or made in the ordinary course of business. These facts more than adequately demonstrate that there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation.

Felton Petroleum, therefore, satisfies this requirement for a preliminary injunction.

### B. GPM's scheme to convert the Felton BP station into a company operated station is explicitly prohibited by the PMPA.

GPM simply has no argument whatsoever that it did not intend to convert the Felton station into a company owned station. It therefore completely ignores this statutory requirement and the arguments made by Felton in its opening brief.

---

[29] GPM's Answering Br. at 21.

While the arguments made by Felton in its opening brief are compelling, GPM's recently produced documents remove any doubt that GPM targeted Felton for company takeover. As discussed above, GPM's model demonstrates that the Felton station was "targeted" from the beginning for conversion to company operation by GPM. The Felton station was modeled from day one based on GPM operation and its rent was set at a level that no operator other than GPM could meet—this fact is not discussed or disputed by GPM.

Even if GPM's proposed rent increase was in good faith, the PMPA explicitly prohibits termination for the purpose of converting the leased marketing premises to operation by employees or agents of the franchisor for the benefit of the franchisor. The evidence cited demonstrates that that is exactly what GPM plans to do. In light of completely no opposition to the evidence that GPM's rent increase was for the purpose of converting the Felton station to a company-owned operation, more than serious questions going to the merits of the case are ripe for litigation.

Felton Petroleum, therefore, satisfies this requirement for a preliminary injunction as well.

### C. The Balance of Hardships Weighs Strongly in Favor of Felton Petroleum.

Next, GPM makes a token argument that somehow the balance of hardships tips in its favor. It relies solely on vague characterizations of harm and sheer speculation that "GPM stands at risk to lose part of ███████████████████████████████████ renew the Felton franchise lease on rent terms less than offered to Felton Petroleum."[30] Although entirely unsupported, this allegation is entirely irrelevant.

---

[30] GPM's Answering Br. at 28.

11

Felton's present motion has nothing to do with the Court setting any lease terms, it is simply a motion for a preliminary injunction. The only issue relevant to the Court is whether the balance of hardships in granting the injunction tip in Felton's favor. The injunction has nothing to do with the ultimate relief or remedy Felton gets, it is just to determine if the status quo is maintained so Felton does not go out of business before its case may be heard.

The grant of an injunction will have absolutely no effect—or create some "domino effect"—on other lease renewals. GPM can apply any rent increase formula it likes to any subsequent renewals regardless of the injunction. If, however, as the evidence shows, it is determined at trial that GPM's actions violated the PMPA, there would be ramifications. But, that is an issue for another day and has no relevance to the Court's inquiry at this stage.

The undisputed fact remains that in the absence of an injunction, Felton Petroleum and Mr. Patel will lose everything. His franchise is terminated and the Felton station will become operated by GPM. Mr. Patel will lose his business, his job and the means to continue this litigation. These are the only relevant facts that have been presented and, therefore, the balance of hardships strongly weighs in Felton's favor.[31]

2.  **No Bond is Required or Warranted in this Case**

Seemingly recognizing that a preliminary injunction is warranted in this case, GPM states that if the Court grants Felton's motion "a bond would be required."[32] Citing absolutely no support for this erroneous proposition, GPM argues that the standard for issuing a bond under the PMPA is Fed. R. Civ. P. 65(c). In fact, however, § 2805(b)(3) addresses the issue of bonds under the PMPA. It states:

---

[31] *See Greco v. Mobil Oil Corp.*, 597 F. Supp. 468, 471(N.D. Ill. Nov 20, 1984) (finding that balance of hardships weighs in favor of the franchisee where the franchisee would lose his job and sole source of income while the franchisor would continue to receive rent payments).
[32] GPM's Answering Br. at 29.

>Nothing in this subsection prevents any court from requiring the franchisee in any action under subsection (a) of this section to post a bond, in an amount established by the court prior to the issuance or continuation of any equitable relief.[33]

As the Court explained in *Mobil Oil Corp. v. Vachon*,[34] the PMPA "does not articulate a categorical imperative mandating the posting of a bond. Had Congress intended the mandatory posting of bond, it would have specifically stated this requirement in the statute. The foregoing conclusion is dictated by the application of the plain meaning doctrine to the statute." This permissive standard is much different than the erroneous mandatory standard GPM would have this Court apply.

GPM then asks this Court to require Felton Petroleum and Mr. Patel to essentially prepay the entirety of the rent differential it could not afford in the first place. It argues that Felton should have to post a bond in an amount representing the difference between its current rent and GPM's proposed $200,000 annual rent. Quite frankly, if Felton could have afforded that it would have just paid it. The reason we are here today is because Felton cannot afford that rent— by GPM's design. To require such an onerous bond, particularly under the PMPA's permissive standard would be gravely inequitable.

In fact, in cases such as this one, courts have frequently concluded that no bond should be required of the franchisee.[35] In this case, $93,199.81 bond requested by GPM is entirely unreasonable. Mr. Patel does not have that kind of money, nor could he likely get it given his current tenuous employment status and potential financial ruin. Given GPM's stated annual

---

[33] 15 U.S.C. § 2805(b)(3) (1994).
[34] 580 F. Supp. 153, 159 (D. Mass. 1983)
[35] *Mobil Oil Corp. v. Vachon*, 580 F. Supp. at 159-160 (preliminary injunction granted without posting of bond); *Davy v. Murphy Oil Corp.*, 488 F. Supp. 1013 (D. Mich. 1980) (preliminary injunction granted without posting of bond); *Daniels v. Dilmar Oil Co.*, 502 F. Supp. 178 (D.S.C. 1980) (preliminary injunction granted without posting of bond); *Chestnut Hill Gulf, Inc. v. Cumberland Farms, Inc.*, 788 F. Supp. 616, 619 (D. Mass. 1992) (preliminary injunction granted without posting of bond).

revenue in excess of $900,000,000.00, it is most likely to survive without Mr. Patel's extra $93,199.81.

No bond should be required in this case.

## Conclusion

Felton Petroleum has demonstrated that 1) its franchise was terminated; 2) there are more than sufficiently serious questions going to the merits of this case making it a fair ground for litigation; and, 3) the balance of hardships weigh strongly in its favor.  Under the PMPA's relaxed preliminary injunction standard, and in the interest of justice, the Court should exercise its discretion and grant Felton Petroleum's motion for a preliminary injunction.

Upon granting the preliminary injunction, the Court has discretion in determining whether a bond should be required.  As the equities, and relevant case law illustrates, no bond should be required.

**PRICKETT, JONES & ELLIOTT, P.A.**

/s/ D. Benjamin Snyder
John W. Paradee  (# 2767)
D. Benjamin Snyder (# 4038)
Kevin M. Baird (# 4219)
11 North State Street
Dover, Delaware 19901
(302) 674-3841
*Attorneys for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2008, a true and correct copy of the **REDACTED VERSION OF FELTON PETROLEUM'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION** was served on the following parties in the manner indicated:

### BY HAND-DELIVERY

Michael R. Robinson, Esquire
MRobinson@saul.com
Saul Ewing LLP
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, Delaware 19899-1266

/s/ D. Benjamin Snyder
D. Benjamin Snyder (# 4038)
dbsnyder@prickett.com